IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD E. LONG, | : | Case No. 4:16-cv-00138 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| HARTFORD LIFE AND | : | |
| ACCIDENT INSURANCE CO. | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
August 29, 2016

Pending before this Court is a motion to dismiss[1] pursuant to Federal Rule of

Civil Procedure 12(b)(6), filed by Defendant Hartford Life and Accident Insurance

Co. (hereinafter "Hartford") against Plaintiff Ronald Long (hereinafter "Mr.

Long"), wherein Hartford seeks to dismiss Mr. Long's complaint in its entirety.

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a)(1) as the amount in controversy exceeds $75,000 and the parties are

citizens of different states. The motion has been fully briefed and is ripe for

disposition. For the reasons discussed, Hartford's motion is granted in part and

denied in part.

---

[1] ECF No. 8.

1

## I. BACKGROUND

This matter arises from an insurance contract entered into by the parties. In 2012, Mr. Long, who has type I diabetes, purchased Hartford's Accidental Death and Dismemberment Policy (hereinafter "the Policy") after viewing brochures in which Hartford promoted the fact that no medical questions or exams were required to obtain the coverage. Over the next year, Mr. Long honored his obligations under the contract and paid the premiums due under the Policy in a timely manner.

On February 9, 2013, Mr. Long slipped and fell on rocks near his home in Clinton County, Pennsylvania, injuring his left ankle and the lower portion of his left leg. After seeking medical attention several later, Mr. Long was advised that he was suffering from multiple infections and that amputation of his leg below the knee would be required to control an infection from spreading further into his body. On March 21, 2013, Mr. Long's left foot and lower leg were amputated.

Mr. Long subsequently sought coverage from Hartford under the Policy, which offers coverage in the amount of $100,000[2] for the loss of one foot. Mr. Long was denied coverage and he brought the instant action.[3] In his complaint, Mr.

---

[2] Mr. Long alleges that the coverage was in the amount of $50,000. After review of the policy itself, however, it is clear that the policy was one with a principal sum of $200,000 and that the recovery of loss of "either hand or foot" was "50% of the Principal Sum." ECF No. 7-1.

[3] Mr. Long also brought an action against another insurance company, Stonebridge Life Insurance Co., based on the same incident. See Docket No. 4:16-cv-00139. The defendant in the Stonebridge action also brought a motion to dismiss based on the same arguments as the pending motion in the Hartford matter. Accordingly, the Memoranda Opinions and Orders that follow in each case mirror each other.

Long brings counts for breach of contract (Count I) and bad faith under 42 Pa.C.S. § 8371 (Count II) (hereinafter referred to as the "§ 8371 bad faith claim").

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[4] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[5] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[6]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[7] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[8] More specifically, the Court in these

---

[4] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[5] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[6] *Neitzke*, 490 U.S. at 327.

[7] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[8] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[9] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[10] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

[11] *Iqbal*, 556 U.S. at 678.

[12] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[13] *Twombly*, 550 U.S. at 556.

[14] *Iqbal*, 556 U.S. at 679.

plausibility of entitlement to relief.'"[15]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[17] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[18] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[19]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[20]

---

[15] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).
[16] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[17] *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[18] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).
[19] *Iqbal*, 556 U.S. at 678.
[20] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

## III. DISCUSSION

In its motion to dismiss, Hartford seeks to dismiss both counts of Mr. Long's complaint for failure to meet pleading standards. It alternatively seeks to dismiss Count II to the extent that it is based on conduct preceding the execution of the Policy. Mr. Long, on the other hand, argues that he has pled sufficient facts to support his breach of contract claim and that he has also pled sufficient facts to support a § 8371 bad faith claim based on predatory marketing.

As this matter is before this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), the law of the Commonwealth of Pennsylvania applies.[21]

## A. Count I: Breach of Contract

Hartford argues that Mr. Long has failed to meet the pleading requirements because he has failed to identify any specific Policy provision that Hartford has breached. Mr. Long argues that he has pled sufficient facts to establish the claim.

To state a claim for breach of contract in Pennsylvania, a plaintiff must allege the following: 1) the existence of a contract, including its essential terms, 2) that the defendant breached the contract, and 3) that the plaintiff suffered damages as a result.[22] The contract need not be filed with the complaint.[23] In fact, "[w]hen a plaintiff pleads a contract according to its legal effect, the complaint does not need

---

[21] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

[22] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003); *see also Discover Bank v. Stucka*, 33 A.3d 82, 86 (Pa. Super Ct. 2011) (*citing McShea v. City of Philadelphia*, 995 A.2d 334, 340 (2010)).

[23] *AM Logistics Inc. v. Sorbee Intern.*, 2014 WL 99451 (E.D. Pa. January 9, 2014).

to resort to a formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond."[24]

Mr. Long's complaint makes clear that a contract existed between the two parties and that the contract was for an accidental death and dismemberment insurance policy. Mr. Long also pleads facts indicating that he suffered an accident and developed an infection, which required the amputation of his lower left leg. He goes on to plead that he was denied coverage after submitting a claim under the Policy.

While Mr. Long's complaint is relatively sparse, Mr. Long also attached the five page Policy itself to the complaint.[25] The Policy states that if an "injury" results in one of the stated losses, including the loss of "[e]ither hand or foot," the Policy will cover the loss at the sum stated.[26]  It goes on to define "injury" as:

> [B]odily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under the Policy. Loss resulting from : a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury.[27]

The Court agrees that Mr. Long has provided sufficient facts in his complaint, particularly when considered in conjunction with the attached Policy at

---

[24] *Id. citing Transport Int'l Pool, Inc. v. Ross Stores, Inc.,* 2009 WL 1033601 (E.D. Pa. April 15, 2009).
[25] ECF No. 7-1.
[26] *Id.* at 2.
[27] *Id.* at 3.

issue, to place Hartford on notice of the claim in such a way that it can reasonably respond. Whether Mr. Long's loss was attributed to his accident or his type I diabetes is an issue to be considered in a motion for summary judgment, after discovery has occurred.

## B. Section 8371 Bad Faith Claim

### 1. Mr. Long has pled sufficient facts to survive a motion to dismiss on his § 8371 bad faith claim.

Hartford alleges that Mr. Long has failed to plead any bad faith conduct or any facts to support the conclusion that Hartford did not have a reasonable basis for denying benefits or that it knew or recklessly disregarded its lack of reasonable basis in denying the claim.

Pennsylvania's bad faith statute allows a plaintiff to recover interest, punitive damages, court costs and attorney fees if the insurer has acted in bad faith in handling the plaintiff's claim.[28] Bad faith includes "any frivolous or unfounded refusal to pay proceeds of a policy" and is "a breach of a known duty [of good faith and fair dealing] through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith."[29] To recover on a claim of bad faith, the plaintiff must demonstrate that: (1) the defendant did not have a reasonable basis for

---

[28] 42 Pa.C.S.A. § 8371.
[29] *Keefe v. Prudential Prop. And Cas. Ins. Co.*, 203 F.3d 218 (3d Cir. 2000) (*citing Terletsky v. Prudential Property and Casualty Insurance Co.*, 649 A.2d 680, 688 (1997)).

denying benefits under the policy; and (2) the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.[30]

In considering the first prong of this analysis, the "court should examine what factors the insurer considered in evaluating a claim.  Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured."[31] Under the second prong of the analysis, mere negligence or bad judgment does not constitute bad faith.[32] A showing of recklessness is sufficient, however, to prove bad faith under the statute.[33]

After disregarding the conclusory statements, Mr. Long pled the following facts to support his § 8371 bad faith claim: 1) Hartford failed to conduct a proper investigation of the claim as evidenced by the fact that Hartford failed to obtain Mr. Long's podiatric and family physician records; 2) Hartford inaccurately denied Mr. Long's claim based upon his death and not the loss of his limb; 3) Hartford made a finding that Mr. Long suffered from Type II diabetes when he actually suffered from Type I diabetes; 4) Hartford made a finding that Mr. Long had previously had a toe amputated due to his diabetes, a fact that Mr. Long alleges is not correct; 5) Hartford relied only on medical records that supported Hartford's

---

[30] *Keefe*, 203 F.3d at 225 (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)); *see also Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994).
[31] *Padilla*, 31 F.Supp.3d at 675 (*quoting Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006).
[32] *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994); *see also Condio*, 899 A.2d at 1143 (*citing Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000)).
[33] *Polselli*, 23 F.3d at 751.

decision to deny coverage and ignored medical records that did not support denial; 6) and Hartford referred to Mr. Long as Robert Long instead of Ronald Long.[34]

In light of the foregoing, I conclude that Mr. Long has pled sufficient facts to support his § 8371 bad faith claim. Mr. Long's complaint adequately states facts that suggest that Hartford's decision to deny Mr. Long the benefits under the Policy was reached through an unreasonable or inadequate investigation and that raise an inference that Hartford may have acted with reckless disregard considering its lack of reasonable basis in denying the claim.

### 2. Pennsylvania law does not provide for recovery on a § 8371 bad faith claim when it is based on violations of the Pennsylvania Unfair Insurance Practices Act.

Hartford further argues that Mr. Long's bad faith claim should be dismissed to the extent that it is based on conduct preceding the execution of the Policy, namely, that the claim cannot be based on Hartford's marketing practices. Hartford contends that Pennsylvania law does not grant relief for a bad faith action against an insurer engaged in unfair or deceptive practices in soliciting the purchase of a policy.

Mr. Long argues conversely that he has pled sufficient facts to assert a claim of bad faith based on violations of the Pennsylvania Unfair Insurance Practices Act (hereinafter "the UIPA"). He contends that Hartford's marketing practices, through

---

[34] ECF No. 1 at ¶ 25(f).

which the Policy was marketed to targeted customers with pre-existing medical

conditions, led him to the reasonable expectation that he would be covered for

accidental death or dismemberment despite his pre-existing diabetes. He claims

that this reasonable expectation continued after he purchased the policy and,

therefore, Hartford's marketing of the Policy to consumers with a pre-existing

condition went beyond conduct preceding the execution of the Policy.

Each party cites a case in support of its argument. Hartford cites *Toy v.*

*Metropolitan Life Insurance Company*,[35] in which the court held that a plaintiff

may not recover under § 8371 against an insurer who engages in unfair or

deceptive practices in soliciting the purchase of an insurance policy.[36] Mr. Long

cites *Hayes v. Harleysville Mutual Insurance Company*,[37] for the contention that

"an insurer may be liable for bad faith conduct if the insurer has violated the

[UIPA]."[38]

The holding in *Toy*, however, is controlling in this case. *Toy* was decided by

the Supreme Court of Pennsylvania, whereas *Hayes* was decided four years earlier

---

[35] 928 A.2d 186 (Pa. 2007).

[36] *Id.* at 200.

[37] 841 A.2d 121 (Pa. Super. Ct. 2003) (*citing O'Donnell v. Allstate Insurance Company*, 734 A.2d 901 (Pa. Super. Ct. 1999)).

[38] *Hayes,* 841 A.2d at 125. Mr. Long also cites a long list of cases supporting Pennsylvania's Doctrine of Reasonable Expectations, which states that an insurer may not use the explicit language of its insurance policy to defeat the reasonable expectations of an insured. *See Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 139 (3d Cir. 2005). Only two of the cases cited by Mr. Long, however, deal with bad faith claims arising under § 8371. The two that do contain a claim under § 8371 are distinguished from the case at bar. The first is, curiously, the Pennsylvania Superior Court's decision in *Toy*, which was appealed and decided by the Supreme Court and discussed above. The second is *Knouse v. General American Life Ins. Co.*, 391 F.3d 907 (8th Cir. 2004) (applying Pennsylvania law), a case in which the court did not reach the merits of the § 8371 claim, discussing instead only the statute of limitations of the claim. Therefore, if Mr. Long seeks to establish a claim under this doctrine, he must do so in a count separate from his § 8371 bad faith claim by amending his complaint, after seeking leave of Court.

by the Superior Court of Pennsylvania. Furthermore, in *Toy*, the Pennsylvania

Supreme Court engaged in a thorough review of the legislative and common law

history of § 8371 and that of other states with similar provisions. In doing so, it

explained:

> Presently, Toy adopts the trial court's perspective, arguing that the Legislature did not articulate the reach of a bad faith claim under § 8371, and intended the statute to remedy any act that is prohibited to insurers under Pennsylvania's common or statutory law. Thus, Toy argues, if an insured alleges that an insurer violated a provision of the UIPA, as she has, the insured necessarily states a bad faith claim under § 8371.

> We disagree. In 1990, at the time that the General Assembly enacted § 8371 to provide a remedy to an insured when his insurer "'acted in bad faith toward [him],'the term 'bad faith' had acquired a 'peculiar and appropriate meaning' in this context." When we incorporate that meaning into § 8371, as the Act instructs, and also consider that § 8371 speaks to an action "arising under an insurance policy," and grants an award based on the "amount of the claim from the date the claim was made by the insured," we need go no further than the words of the statute to ascertain that the Legislature did not intend to provide Toy with a remedy under § 8371 for the deceptive or unfair practices in which she alleges Metropolitan engaged in soliciting her purchase of the Policy.[39]

Accordingly, Mr. Long's § 8371 bad faith claim must be dismissed, with

prejudice, to the extent that it rests on violations of the UIPA.

---

[39] *Toy*, 928 A.2d at 195-6 (internal citations omitted).

## IV. CONCLUSION

In accordance with the foregoing analysis, Hartford's motion to dismiss[40] is denied in part and granted in part. Mr. Long's § 8371 bad faith claim is dismissed to the extent that it is based on a violation of the UIPA.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[40] ECF No. 8.