IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD E. LONG, | No. 4:16-CV-00138 |
| Plaintiff, | (Judge Brann) |
| v. | |
| HARTFORD LIFE AND ACCIDENT INSURANCE CO., | |
| Defendant. | |

**MEMORANDUM OPINION**

**JUNE 28, 2018**

The Hartford Life and Accident Insurance Company moved for summary judgment on both counts of Ronald E. Long's complaint. It also moved to strike an affidavit submitted by Mr. Long in opposition to summary judgment. For the reasons that follow, Hartford's motion for summary judgment will be denied in part and granted in part, and its motion to strike will be denied.

**I.　BACKGROUND**

On February 20, 2013, Mr. Long's severely infected left foot was amputated at the Williamsport Hospital.[1] At that time, he was insured under an accidental death and dismemberment policy issued by Hartford, which promised certain

---

[1] Defendant's Ex. P. (All of Defendant's exhibits are located at ECF No. 28.)

benefits if, *inter alia*, he suffered an "injury" that "result[ed] in" the "loss of . . . either . . . foot."[2] Alleging that his amputation was covered by the policy, Mr. Long submitted a timely claim for benefits.[3] Hartford believed the amputation was not covered, and denied the claim.[4] Consequently, Mr. Long sued Hartford for breach of contract and bad faith.

    A.    **Mr. Long's Medical History and Accident**

Mr. Long was diagnosed with diabetes in 1974.[5] Throughout the years he, like many diabetics, had recurring problems with his feet, including neuropathy and frequent, slow-healing wounds.[6] As a result, he had regular visits with his podiatrist, Dr. Schlorff, who would treat, and oversee the healing of, Mr. Long's podiatric wounds.[7] At the time underlying the events of this case, in fact, Dr. Schlorff had been treating a large diabetic ulcer on the bottom of Mr. Long's left foot, near his toes.[8]

---

[2]    Defendant's Ex. E at AFFINION 000022 CORRECTED.

[3]    Defendant's Ex. Q.

[4]    Defendant's Exs. R and U.

[5]    Defendant's Ex. A (Deposition of Ronald Long) at 25.

[6]    *Id.* at 28, 29.

[7]    Defendant's Exs. G and H.

[8]    Plaintiff's Ex. D at 19. (All of Plaintiff's exhibits are located at ECF No. 31-1.)

Mr. Long testified in deposition that, in early February 2013, he injured himself after slipping and falling on some rocks.[9] As will be discussed below, there is some dispute as to the exact location of this injury. Nevertheless, as a result of it, Mr. Long called into Dr. Schlorff's office and was prescribed an antibiotic over the telephone.[10]

The antibiotics apparently did not help, so several days later, on February 12, 2013, Mr. Long saw Dr. Schlorff in person. The records from that visit indicate that there was a "blister," or "abscess formation," on the "medial aspect of [Mr. Long's] left arch" with "positive signs of system infection beyond the area of chief complaint." The records do not mention any accidental injury. Because of the severity of the infection, Dr. Schlorff suggested that Mr. Long seek treatment at the Williamsport Hospital.[11]

Mr. Long went to the emergency room that same day. The intake records from the ER, as well as the ER doctors' reports, list Mr. Long's malady as a "diabetic ulcer."[12] Like Dr. Schlorff's report, none of them mention any accidental injury, and, in fact, one indicates that Mr. Long "denie[d] any trauma to th[e] area"

---

[9] Defendant's Ex. A at 120.

[10] Defendant's Ex. N.

[11] Defendant's Ex. H at LONG/SCHLORFF 00051.

[12] Defendant's Ex. I at LONG/WRMC 000313; Defendant's Ex. O at LONG/HARTUNG 000009.

of the wound.[13]  These reports, however, do distinguish between the infection on Mr. Long's arch and the ulcer near his toes.[14]

The next day, February 13, 2013, Mr. Long saw a Dr. Sajja, whose report indicated that Mr. Long was "hospitalized with [a] severe left diabetic foot infection."[15]  The hospital treated the foot for several days, to no avail,[16] and on February 20, 2013, Dr. Sajja amputated it.  That doctor's "Operative Report" lists the preoperative and postoperative diagnoses as "[s]evere left diabetic foot infection."[17]

After the surgery, Mr. Long was admitted to a rehabilitation center, from which he was released on March 1, 2013.  His "Discharge Summary" from the center claims that his amputation was due to an "infected left diabetic foot ulcer."[18]

### B. The Policy and Mr. Long's Claim Under It

As noted above, Mr. Long could recover under the accidental death and dismemberment policy if an "injury result[ed] in" a lost foot.  The policy defined

---

[13]  Defendant's Ex. O at LONG/HARTUNG 000009-13; Defendant's Ex. I at LONG/WRMC 000339-43.

[14]  Defendant's Ex. O at LONG/HARTUNG 000010 (noting that Mr. Long "has been doctoring with Dr. Schlorff for quite some time, and recently has been seeing him every two weeks for the diabetic foot ulcer on the plantar surface of his left foot, which per patient has been getting better."); Defendant's Ex. I at LONG/WRMC 000341 ("He has a chronic ulcer on the plantar surface, which actually seems relatively clean.").

[15]  Defendant's Ex. P at LONG/SAJJA 000027.

[16]  Defendant's Ex. O at LONG/HARTUNG 000026; *id.* at LONG/HARTUNG 000030.

[17]  Defendant's Ex. P at LONG/SAJJA 000024.

[18]  Defendant's Ex. I at LONG/WRMC 000047.

"injury" as "bodily injury resulting directly from accident, and independently of all other causes," and noted that "loss resulting from . . . sickness or disease" was "not considered as resulting from injury." The policy, however, excluded "a pus-forming infection which occurs through an accidental would" from this "sickness or disease" exemption.[19]

On February 11, 2014, Mr. Long submitted a claim for recovery under this provision. His "Statement of Claim" indicated that his amputation was the result of an "accident"; specifically, he averred that he had "injured [the] ankle of [his] left foot" after he "slipped on rocks while cleaning a stove pipe of soot." The attached "Physician's Statement," however—which was signed by Dr. Sajja—indicated that the "injury" at issue was a "left foot diabetic infection and ulcer."[20]

Hartford first responded to Mr. Long's claim on June 5, 2014.[21] Its letter from that day indicates that it had reviewed Mr. Long's Statement of Claim and Dr. Sajja's Physician's Statement, as well as other, unidentified medical records.[22] Reflected on Mr. Long's history of diabetes-related foot problems, Hartford noted that none of the medical records mentioned an "accidental injury," but instead all

---

[19] Defendant's Ex. E. The full language reads: "Loss resulting from: a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury."

[20] Defendant's Ex. Q.

[21] Defendant's Ex. R.

[22] *Id.*

indicated that the amputation was the result of a "diabetic foot infection."[23] Therefore, because the policy did not cover "loss resulting from sickness or disease," Hartford denied Mr. Long's claim.[24] Mr. Long appealed this decision.[25]

Hartford decided Mr. Long's appeal on December 22, 2015.[26] Its letter from that day indicates that it had conducted a *de novo* review of the previously-compiled record, and had also reviewed medical records submitted on appeal that were not included with the initial claim.[27] Once again, noting his "longstanding history of diabetes," Hartford asserted that Mr. Long's medical records consistently referenced a "diabetic foot ulcer" and failed to mention any "injury."[28] Therefore, because Mr. Long's loss was caused by "a sickness/disease," and was "not the result of a bodily injury resulting directly from accident," Hartford upheld the denial of his claim.[29]

---

[23] *Id.*

[24] *Id.*

[25] Defendant's Ex. S.

[26] Defendant's Ex. U.

[27] *Id.*

[28] *Id.*

[29] *Id.*

## C. Procedural History

Mr. Long initiated the above-captioned action against Hartford by filing a two-count complaint on January 26, 2016.[30] In Count I, he argued that Hartford breached its contract with him by failing to pay benefits for his amputated foot.[31] In Count II, he argued that Hartford's denial of his claim was in bad faith, in violation of 42 Pa. C.S. § 8371.[32]

After discovery, Hartford moved for summary judgment.[33] Attached to Hartford's motion was Mr. Long's deposition, in which he testified that he slipped and fell on some rocks, and injured "the right ankle of [his] . . . left foot . . . where the ankle bone sticks out."[34] In that deposition, he denied that the injury was to his "left arch," but made it clear that he "understood [his] arch [as being] on the bottom of the foot."[35] When opposing Hartford's motion, Mr. Long submitted an affidavit stating that he had "review[ed] photographs" taken of his injury on the day he went to the hospital, and as a result, realized that "the injury [he]

---

[30] ECF No. 1.

[31] *Id.* ¶¶ 19-21.

[32] *Id.* ¶¶ 22-25.

[33] ECF No. 27.

[34] Plaintiff's Ex. B at 88, 91.

[35] *Id.* at 91.

suffered . . . was lower than my ankle" and was in fact on "the middle of [his] foot on the side of the arch."[36]

After the summary judgment briefing was complete, Mr. Long moved for leave to supplement the record with the report of his expert, Dr. Ajay Rao.[37] Hartford opposed this motion.[38] Hartford also moved to strike Mr. Long's affidavit, claiming that its inconsistency with his earlier deposition meant that it was a sham, created solely for the purpose of defeating summary judgment.[39]

## II. DISCUSSION

### A. Standard of Review and Burden of Proof

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[41] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's

---

[36] Plaintiff's Ex. A ¶ 8. The photographs in question were also attached to Mr. Long's opposition. Plaintiff's Ex. C.

[37] ECF No. 37.

[38] ECF No. 40.

[39] ECF No. 33.

[40] Federal Rule of Civil Procedure 56(a).

[41] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

favor.[42] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[43]

In breach of insurance contract cases, the insured bears the burden of establishing that his claim comes within the policy's coverage.[44] The insurer, however, bears the burden to show that an insured's claim is barred by some "exception or exclusion" within the policy.[45] Here, the parties have not addressed whether Hartford's denial of Mr. Long's claim was because his claim fell outside the policy's coverage, or was because it fell within some exclusion. Because this issue need not be resolved at this stage, this Court will not decide it.

B. Interpreting the Language of the Contract

In Pennsylvania, insurance policies excluding coverage where a loss is "caused directly or indirectly by disease" are construed broadly *against* the insured, and "there can be no recovery [under such policies] if pre-existing disease contributed to the [loss]."[46] In its brief, Hartford cites to this proposition and

---

[42] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[43] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[44] *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 580 (1987).

[45] *Id.*

[46] *Shiffler v. Equitable Life Assur. Soc. of U.S.*, 838 F.2d 78, 84 (3d Cir. 1988); *see also Ray v. Federal Ins. Co./Chubb*, 256 Fed. Appx. 566, 568 (3d Cir. 2007); *Weiner v. Metropolitan Life Ins. Co.*, 416 F. Supp. 551, 558 (E.D. Pa. 1976).

numerous cases applying it,[47] and argues that, based on the submitted evidence, Mr. Long cannot show that his diabetes, especially considering its severity, did not increase his need for amputation in some way.[48]

The policy in this case, however, does not neatly align with the policies discussed in the cases cited by Hartford. Here, Mr. Long was entitled to recover if his "[i]njury result[ed] in [the] loss of . . . either . . . foot."[49] The policy, in turn, defined "injury" as "bodily injury resulting directly from accident and independently of all other causes . . . [including] sickness or disease."[50] Reading this language all together, it is clear that, while Mr. Long's *injury* had to be independent of any "sickness or disease," there is no similar requirement applicable to his *loss*.[51] In other words, if Mr. Long can demonstrate that he suffered some accidental injury, not caused in any way by his diabetes, which injury eventually "result[ed] in" his amputation, it is irrelevant whether or not his

---

[47] Defendant's Brief in Support of Summary Judgment at 16-20 (ECF No. 28).

[48] *Id.*

[49] Defendant's Ex. E.

[50] *Id.*

[51] *Cf. Joseph v. Hartford Life and Accident Insurance Company*, 2010 WL 11506052 at *6 (S.D. Fla. Mar. 17, 2010) (interpreting an identically-worded policy and stating that "[e]ven if the Court were to assume, for argument's sake, that the decedent's diabetes substantially contributed to the loss—or even that the loss would not have occurred but for the diabetes—this does not change the result, because the loss (death) resulted from the injury (the wound) within 365 days and *nothing in the policy requires that the loss directly and independently arise as a result of the injury*.") (emphasis added).

diabetes exacerbated the consequences of his injury such that amputation would not have occurred but for his medical condition.[52]

## C. Whether Mr. Long Can Prevail on His Breach of Contract Claim

To defeat Hartford's motion for summary judgment, Mr. Long must point to sufficient evidence for a jury to find that he suffered an accidental injury, not caused in any way by sickness or disease, and that the injury resulted in the amputation.

As noted above, there is a discrepancy between Mr. Long's deposition and his affidavit about the location of his injury, and Hartford has moved to strike the affidavit on the basis of that discrepancy. The photographs of Mr. Long's injury show an area of severe infection beginning perhaps two inches below the inside of his left ankle. While this testimonial inconsistency is certainly ripe for rigorous cross-examination, it is not impervious to innocent explanation, such as faulty memory, confusion, or imprecise language. In any event, it is not significant enough for this Court to conclude that the affidavit should be stricken.[53]

---

[52] As noted above, the policy contains an exemption from the "sickness or disease" exclusion that covers "[l]oss resulting from . . . a pus-forming infection." Since evidence in the record could support the finding that Mr. Long, in fact, did suffer from such a wound, this language appears to be another basis on which Mr. Long can recover. Because resolution of this question is not necessary to the disposition of the pending motions, however, this Court will not decide it.

[53] *See generally Daubert v. NRA Group, LLC*, 861 F.3d 382, 391-92 (3d Cir. 2017).

Mr. Long's affidavit, then, provides sufficient evidence for a jury to find that he suffered an accidental injury to the inside of his left foot. Hartford does not argue that this injury was in some way caused by his diabetes—*e.g.*, it does not argue that his diabetes somehow made him more susceptible to falls—nor does this Court see any evidence in the record to support such an argument. There is also sufficient evidence for a jury to find that the wound from this injury became infected and, consequently, resulted in amputation. After all, there is no dispute that Mr. Long's amputation was due to a foot infection, or that the infection was located primarily on the area where Mr. Long alleges his injury occurred. And as discussed above, it is irrelevant whether Mr. Long's diabetes increased the severity of the *consequences* of his injury.

This Court, therefore, will deny Hartford's motion for summary judgment on Count I of Mr. Long's complaint. It will also deny Hartford's motion to strike Mr. Long's affidavit.

### D. Whether Mr. Long Can Prevail on His Bad Faith Claim

To prevail on his claim for bad faith, Mr. Long must show, by clear and convincing evidence, that Hartford "did not have a reasonable basis for denying benefits under the policy," and that Hartford "knew of or recklessly disregarded its lack of a reasonable basis in denying the claim."[54]

---

[54] *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).

Mr. Long cannot sustain this claim. As noted, none of the medical records reviewed by Hartford mentioned an injury, and most of them specifically identified diabetes as the cause of his amputation. The only evidence in front of Hartford regarding any alleged injury was Mr. Long's own words on his "Statement of Claim." Whether or not the medical records are accurate remains to be seen, of course. But an insured cannot sustain a bad faith claim with merely *ipse dixit*. Therefore, summary judgment will be granted to Hartford on Count II of Mr. Long's complaint.

## III. CONCLUSION

For the reasons discussed above, this Court will deny Hartford's motion for summary judgment on Count I of Mr. Long's complaint, but will grant it on Count II of that complaint. This Court will deny Hartford's motion to strike and, because it did not need to rely on Dr. Rao's report, will deny Mr. Long's motion to supplement the record as moot.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge